**FILED**
**Jun 09, 2025**
**10:54 AM(CT)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | |
|---|---|
| **Gregory White,** | **)**    **Docket No. 2023-06-8053** |
|       **Employee,** | **)** |
| **v.** | **)** |
| **Gerber Collision and Glass, and** | **)** |
| **Farmington Casualty Co.,** | **)**    **State File No. 48454-2023** |
|       **Employer/Carrier,** | **)** |
| **And** | **)** |
| **Troy Haley, Administrator, Subsequent** | **)** |
| **Injury Fund,** | **)**    **Judge Kenneth M. Switzer** |
|       **Carrier.** | **)** |

---

## COMPENSATION ORDER GRANTING BENEFITS

---

Gregory White injured his left foot while working for Gerber Collision and Glass. He contended that a door panel fell on top of his foot and then he stepped on a screw, injuring the bottom of his foot. Unfortunately, Mr. White underwent a partial amputation because of a severe infection. Gerber accepted the first injury but not the second, questioning whether the accident occurred as Mr. White described.

The Court held a compensation hearing on May 20, 2025, on the issues of compensability and attorney's fees for an unreasonable denial. After thorough consideration of the evidence and arguments, the Court grants benefits but denies fees.[1]

### Claim History

*Lay Testimony*

Mr. White worked for Gerber as a body technician, repairing/replacing auto parts on vehicles involved in collisions.

---

[1] The Court dismissed the Subsequent Injury and Vocational Recovery Fund from the case on Mr. White's motion because he is not seeking permanent total disability benefits.

On Monday, June 19, 2023, at about 10:00 or 11:00 a.m., Mr. White was "seam sealing" a vehicle door. The door had a razor-sharp edge that he did not notice, which suddenly cut his finger as he lifted it. He dropped it and put his left foot underneath it, attempting to minimize damage to the door. The door fell on the top of his foot and toes. Mr. White put the door down and "limped" or "hobbled over" between two work stalls toward a stool. As he did so, he stepped on a screw with his left foot. After he reached the stool and sat, he saw the screw in his left shoe and removed the shoe. The screw was still embedded in the shoe, and he removed and discarded it.

Mr. White introduced the actual shoe into evidence, showing the hole and a removable sole insert. The hole is visible on the bottom of the shoe, and the sole likewise reveals a hole and dried blood.

Mr. White testified that he felt the screw as it punctured his foot, but initially the top of his foot hurt worse. No one witnessed the incident. He continued working and completed his shift despite the pain. As he left, he told the store manager, Heather Hunter, about the accident in vague terms; "I mentioned something to Heather about it," he said. Mr. White hoped that the pain would subside and nothing further would need to be done.

He went home and removed the shoe to see that his foot had swollen. Annette White, his wife, testified that she observed Mr. White's swollen foot and the puncture wound on the bottom of his left foot, which he attributed to stepping on a screw.

The next day, Mr. White went straight to Ms. Hunter's office to tell her about the incident. He testified that he said he needed treatment because he suspected his foot was broken, and "I told her about the screw[.]" Mr. White repeated that at that point in time, he was more concerned about his upper foot.

Ms. Hunter contacted human resources, which gave them a list of three clinics, and Mr. White chose American Family Care. Mr. White said Ms. Hunter completed a form on her computer, but he never saw what she wrote, nor did she show him a copy. The report reads: "Ee states picking up door to put on stand. Sharp parts on it made ee dropped it on l low leg/ankle/foot. Causing swelling/tenderness."

For her part, Ms. Hunter testified that Mr. White only mentioned dropping a door on his left foot on June 20. It was the first time she had completed an injury report. When she called human resources, the conversation to report the injury was conducted on a speakerphone, and Mr. White participated in the call.

Mr. White went directly to American Family Care, where Daniel Fox, a nurse practitioner, ordered an x-ray. But he never examined the foot, according to Mr. White. He recalled, "I told him I had dropped a door on my foot—that's why I was feeling I needed

an x-ray.  And I stepped on a screw."  However, because the clinic's x-ray technician was not working that day, he was sent to Spring Hill Imaging to have it performed.

After about a ten-minute drive, and at approximately 11:00 a.m., Mr. White arrived at Spring Hill Imaging and was told their x-ray machine was not working.  He never saw a provider there.  So, he called Ms. Hunter and told her he was going to his primary care physician at Dickson Medical Associates because his foot hurt, and she agreed to that.

Mr. White arrived there around noon and saw Dr. Demond White, his regular physician.  He showed him his foot and "told him about the screw hole."  But according to Mr. White, the doctor was more concerned about his blood sugar level because he is diabetic.  Dr. White did not examine his left foot despite Mr. White removing his shoe and sock, but he did order an x-ray.

Mr. White testified, without objection, that his doctor told him the x-ray showed that his foot was not broken and revealed the puncture wound.  Mr. White did not see the x-ray at that time.  The x-ray report does not mention the puncture.  He was released.  Mr. White testified that about two hours passed between him leaving American Family Care and getting the x-ray at Dickson Medical Associates, and that during that time, he did not go anywhere where screws were present.

In the coming days, his condition rapidly deteriorated, so he went to the emergency room.  After another set of x-rays, Mr. White learned his third and fourth toes were fractured and that his white blood cell count was elevated from an infection.  These x-rays showed a puncture wound.  He was admitted to the hospital.

That same day, Ms. White texted Ms. Hunter using his phone to tell her that Mr. White was hospitalized with a foot infection and would not be at work on Monday.  Ms. White also mentioned the screw in their conversation.  This prompted Ms. Hunter to complete a second injury report on Monday, June 26, which reads: "The employee stepped on a screw, the screw went into his left foot and caused an infection (due to him being diabetic)."

Mr. White said Marissa Johnson-Lockhart, an investigative claims representative, called him while he was at the hospital on June 30.  Ms. Johnson-Lockhart confirmed that he told her about dropping the door on his foot and stepping on a screw, although initially he only told Gerber about the car door accident.

In the amended transcript of their conversation, Mr. White said, "[W]hen I was hobbling around, trying to go sit down, I stepped on a screw."  Mr. White added that he did not report stepping on the screw when he told Gerber he dropped the door on his foot "because I just wasn't thinking about it 'cause my foot was hurting so bad."  Ms. Johnson-Lockhart said that after their discussion, she thought both injuries were compensable.

3

Mr. White remained hospitalized for several days and underwent two surgeries, where podiatrist Dr. Reva Bork attempted to remove the infected areas of his foot. He was released but returned to the hospital on July 31, when Dr. Bork told him the infection remained. During the ensuing two-week stay, she amputated the top portion of his foot: all five toes and about two inches below. Mr. White introduced photos of his foot before and after the procedure.

As to the screw that Mr. White alleged punctured his foot, he identified it as a black "self-tapping phillips head," about an inch and a half, or an inch and three-quarters in length.[2] He did not measure it, nor did Mr. White keep the screw after he removed it from the shoe. On Mr. White's request, Ms. Hunter sent him several photos of this type of screw via text.[3] Mr. White said the self-tapping screws are used while welding to hold two panels together.

On cross, Mr. White explained that immediately after the screw punctured his left foot, he put weight on both feet as he limped toward the stool. He put more weight on his uninjured foot; yet he still bore enough weight on the left foot that when he stepped on the screw, it punctured his shoe and his foot. He said he used his pocketknife to remove the screw from the shoe, but at his deposition he testified that he used a screwdriver. Mr. White agreed that Ms. Hunter did not mention the screw in the first injury report that she completed, nor did Mr. Fox in his notes. Yet, he maintained that he told them both about stepping on a screw.

Gerber offered the testimony of Phillip Baxter, a senior technical specialist with the carrier, to explain the investigation and ultimate denial of Mr. White's claim. Mr. Baxter investigates complex medical cases in its Major Case Unit. He said he took over the case from Ms. Johnson-Lockhart on July 13, reviewing the statement she took at the end of June and her claim notes.

Early on, Mr. Baxter "saw some discrepancies in the reporting of the claim," so he requested records from the hospital, American Family Care, and Dickson Medical Associates. Specifically, he noticed that the screw incident was not reported on June 20 to Ms. Hunter, nor was it mentioned in the records for American Family Care or Dickson Medical Associates. Mr. Baxter communicated with Ms. Hunter "several times." On August 7, he confirmed that she first learned of the puncture wound when Mr. White was in the hospital in late June.

---

[2] Mr. White explained that a screw is "self-tapping" because it makes its own hole, and a separate hole does not need to be drilled before it can be used.

[3] Mr. White provided these photos in response to written discovery and disclosed that written discovery might be offered during trial. Ms. Hunter authenticated the texts and photos during her testimony.

That conversation was the first step toward the ultimate denial. Mr. Baxter also told Mr. White on August 7 that the claim was under investigation and that they were "suspending" further medical benefits, but temporary disability would still be paid. Mr. Baxter could not recall if he had spoken with Mr. White any other time. On August 21, Mr. Baxter completed and sent a denial notice stating, "The claim remains under investigation. TTD will be paid during investigation period." Two days later, he filed a notice of controversy.

Mr. Baxter completed and sent a partial denial on October 7, accepting only the upper foot contusion from the door drop. Mr. Baxter said the decision was "collaborative," involving himself, a nurse case manager, and legal counsel, but ultimately it was his responsibility. The notice states: "No medical evidence of puncture wound injury to the left foot from initial authorized provider." The carrier paid $2,464.55 in medical benefits to treat the upper foot. Temporary disability benefits stopped on that date after paying them for 15 weeks.

Mr. Baxter admitted on cross-examination that he knew an amputation claim would be expensive. He could not recall reading records from Dr. Timothy Noonan, an infectious disease specialist, in late July regarding his causation opinion and later said that he "may have" read his notes.[4] Mr. Baxter added that he did not deny the claim on medical causation grounds but rather "reporting and the truthfulness of the reporting." Specifically, he denied the claim because the first report of injury and initial medical records did not mention stepping on a screw.

Gerber additionally offered the testimony of Steven Nathaniel Pendergrast to support its position that the accident did not occur as Mr. White claimed. Mr. Pendergrast is the market manager, supervising the general operations of all Gerber stores across Tennessee. He testified that he took on this role in June 2023.

Mr. Pendergrast said that among his responsibilities is "inventory." He did not order parts but was generally familiar with what each shop has on hand. According to Mr. Pendergrast, in June 2023, the Gerber location where Mr. White worked kept a small amount of black self-tapping screws in the shop, and they were used infrequently. He estimated that only ten to 15 screws were there at any given time. Mr. Pendergrast offered two "sample" screws into evidence: one is about one inch long, and the other is a half-inch. He said referring to the length of the screws, "These are the only black ones that I'm aware of." Mr. Pendergrast could not recall if Gerber had longer self-tapping screws in stock.

---

[4] Dr. Noonan's September 9, 2023 notes state, "the nail that impaled [Mr. White's] foot while working led to his current extensive infection that has necessitated multiple interventions and [antibiotics]. As such, I am hopeful that ongoing care will be appropriately covered by Worker's Comp."

On rebuttal, Mr. White testified that Mr. Pendergrast was not working in that role at Gerber before June 19. Rather, Twyla Harris held that position. Mr. White acknowledged that the sample screws Mr. Pendergrast brought were in the Gerber inventory, but he said that longer screws were also onsite. He also said that the sample screws Mr. Pendergrast offered would not hold two pieces of sheet metal together. Finally, Mr. White disagreed that self-tapping screws are infrequently used at Gerber and that the store kept very few on hand.

*Medical proof*

Mr. White first saw Daniel Fox, N.P., at American Family Care, who noted swelling and bruising on his left foot on exam. He diagnosed a left-foot contusion and ordered x-rays.

Mr. Fox's version of their encounter differs significantly from Mr. White's. Mr. Fox testified that Mr. White only told him about dropping the door on the top of his foot, and he maintained that he examined Mr. White's foot. Mr. Fox said he did not see any skin penetrations or puncture wounds and would have recorded it in his notes if he had. Mr. Fox's notes do not say that Mr. White reported stepping on a screw, but they also state: "Patient denies that any non-work related event" caused his symptoms.

The Dickson Medical Associates records are silent regarding Mr. White stepping on a screw.

The parties also deposed Dr. Bork, who first saw Mr. White on June 26, when he told her he stepped on a screw at work. Dr. Bork agreed that her sole source of information regarding Mr. White's injury was him and his wife. Dr. Bork said an infection could develop from stepping on something within 24 hours and given Mr. White's diabetes, she would have expected it to be worse. She had no reason to believe that Mr. White was lying about how he suffered the puncture wound.

A July 31 note from Dr. Bork says, "patient's workers' compensation was approved." This was before the carrier stopped authorization of additional medical benefits in early August.

Dr. Bork placed Mr. White at maximum medical improvement on January 10, 2024.

Further, Mr. White obtained an independent medical evaluation from Dr. Lawrence Shrader, an orthopedic surgeon, who placed a 19% impairment and walking restrictions. Dr. Shrader testified that the puncture wound from the screw was greater than 50% the cause of Mr. White's need for treatment and resulting impairment. He read Dr. Bork's deposition transcript and agreed with her conclusions, including that Mr. White's injury and need for treatment primarily arose from him stepping on a screw at work. Dr. Shrader

6

additionally reviewed the medical bills totaling $342,186.65 and said the charges were "appropriate and necessary."

## Findings of Fact and Conclusions of Law

Mr. White must prove all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2024).

### *Compensability*

The Workers' Compensation Law defines "injury" to include an "injury by accident . . . only if it is caused by a specific incident, or set of incidents, . . . and is identifiable by time and place of occurrence." § 50-6-102(12)(A).

Here, Mr. White testified that while working on June 19, 2023, he dropped a vehicle door on the top of his left foot, and then, while "hobbling" or "limping" toward a stool, he stepped on a screw, causing a puncture wound on the bottom of his foot. He described the event in detail and remained firm that he stepped on the screw while working for Gerber.

The case turns largely on whether the Court believes this testimony. The Tennessee Supreme Court gave indicia of witness credibility, so that trial courts consider whether a witness is "calm or agitated, at ease or nervous, self-assured or hesitant, steady or stammering, confident or defensive, forthcoming or deceitful, reasonable or argumentative, honest or biased." *Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). The Court finds that Mr. White was calm, at ease, self-assured, steady, confident, forthcoming, reasonable, and honest.

Ms. White bolstered his testimony by confirming that on June 19, after returning home from work, her husband told her about stepping on a screw at Gerber. She observed a puncture wound on his left foot at that time.

Gerber attacked Mr. White's credibility in several ways, the first being that Mr. White could not have put enough force on his left foot where stepping on a screw would puncture the "thick rubber" sole of his shoe, the insert, and his foot. Gerber maintained that Mr. White was avoiding putting pressure on his left foot. Yet, Mr. White offered the actual shoe and its insert, showing holes and dried blood. Notably, Mr. White did not say he was hopping on his right foot only. The Court rejects this contention.

Gerber also pointed out that Mr. White said he used his pocketknife to remove the screw from the shoe at trial, but at his deposition, he testified that he used a screwdriver. This discrepancy does not convince the Court that Mr. White's entire testimony is suspect. Rather, the Supreme Court has held, "[I]f minor and insignificant details vary, an injured

worker should not be penalized simply for being a poor historian." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991).

Gerber further emphasized that the first report Mr. White gave to Ms. Hunter, and the records from American Family Care and Dickson Medical Associates, do not say that he stepped on a screw. Yet, Mr. White testified that he told Ms. Hunter and these two providers—he argued that they simply did not record that in the first report and the medical records. .

But also, case law supports Mr. White's position. In *Hannah v. Senior Citizens Home Assistance Service, Inc.,* 2022 TN Wrk. Comp. App. Bd. LEXIS 15, at *12-13 (Mar. 28, 2022), the employer argued that the absence in the medical records of a report of an identifiable injury, coupled with an employee's "inconsistent" statements and other witness's contrary statements about the date of injury, meant the employee failed to carry her burden of proving an identifiable incident. The Appeals Board disagreed after considering "the entirety of the record," reasoning that the employee's "description of how the injury occurred has been consistent." In addition, "the two medical experts testified that the mechanism of injury she described is consistent with the type of injury she sustained." *Id.*

In this case, as in *Hannah,* Mr. White's testimony was consistent, and the physicians' proof supports his claim. The only medical proof Gerber offered is Mr. Fox's testimony. He is competent to testify as to what he saw, but not to give medical opinions. Mr. Fox's testimony conflicts with Mr. White's; the Court had the opportunity to assess Mr. White's credibility face-to-face and accepts his testimony.

Finally, Gerber offers a circumstantial argument: Mr. Pendergrast's testimony that very few screws of the type Mr. White said punctured his foot were onsite on June 19, 2023. However, just because very few screws were on the premises does not mean that Mr. White did not step on one. Moreover, Mr. White testified that Mr. Pendergrast did not hold that position on the date of his injury.

Considering the above, the Court finds that Mr. White satisfied his burden to show that he suffered an injury by accident caused by a specific incident, or set of incidents, identifiable by time and place of occurrence. Specifically, the evidence preponderates in favor of a finding that mid-morning on June 19, 2023, Mr. White stepped on a screw while working for Gerber, resulting in injury to the bottom of his foot and need for treatment.

*Benefits*

Turning first to medical benefits, Mr. White is entitled to lifetime reasonable, necessary, and related future medical benefits with Dr. Bork. *See Blevins v. S. Champion Tray, LP,* 2019 TN Wrk. Comp. App. Bd. LEXIS 29, at *16-17 (July 11, 2019) (Where an

employer refuses to provide medical treatment and denies an employee's claim, the employer runs the risk that a physician of the employee's choosing will be designated the authorized physician and that the employer will be responsible for paying for that physician's treatment.). Gerber denied the claim and refused to provide medical benefits for the puncture wound. Therefore, Dr. Bork will be the authorized treating physician.

In addition, Dr. Shrader reviewed the bills at his deposition, and confirmed that the billing was "reasonable and necessary." Dr. Shrader's deposition testimony set the bills' total at $342,186.65, while Exhibit 3 to the transcript is "Stipulation of Medical Bills" totaling $352,186.65. Further, by the Court's calculation, they total $375,964.69; see Appendix 2, Bills Spreadsheet.

Gerber argued at trial that some of these bills might be unrelated to the treatment for the work event. But a close review of Dr. Shrader's testimony shows that Gerber did not object to any of the bills discussed at his deposition on these grounds. Nor did cross-examination raise a question about any particular care being unrelated. Therefore, the Court holds that Gerber must pay these bills, subject to the fee schedule. Mr. White's attorney is entitled to a fee of 20% of the amounts paid to the medical providers. *Bowlin v. Servall, LLC,* 2020 TN Wrk. Comp. App. Bd. LEXIS 70, at *16-17 (Nov. 25, 2020).

As to temporary total disability, Gerber paid for 15 weeks of benefits until October 7, 2023. At trial, the parties agreed that Mr. White reached maximum medical improvement on January 10, 2024; his temporary benefits compensation rate is $1,233.10; and he is owed for 13 additional weeks of benefits. Therefore, Mr. White is entitled to $16,030.30 in past-due benefits, payable immediately in a lump-sum. His counsel is entitled to 20%.

As to permanent disability, Mr. White suffered a 19% impairment. Under section 50-6-207(3), this must be multiplied by 450 weeks, which equals 85.5 weeks, times the compensation rate. This equates to an original award of $95,845.50, also immediately payable as a lump sum, and Mr. White's attorney is entitled to 20%. The initial benefit period has not expired yet. If appropriate, he may file a petition for increased benefits on or after September 21, 2025.

*Costs, Attorney's fees, and Referral to Compliance Program*

Section 50-6-239(c)(8) authorizes this Court to "assess discretionary costs including reasonable fees for depositions of medical experts against the employer upon adjudication of the employee's claim as compensable." In addition, Tennessee Rule of Civil Procedure 54.04 provides: "Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trial, reasonable and necessary expert witness fees for deposition . . . for trials[.]"

Mr. White seeks reimbursement for the following:

| | |
|---|---|
| Dr. Lawrence Schrader(deposition) | $1000.00 |
| Ken Mansfield (deposition of Dr. Schrader) | $ 419.00 |
| Lexitas Reporting (deposition of Greg White) | $ 630.35 |
| Lexitas Reporting (deposition of Reva Bork) | $454.30 |
| Lexitas Reporting (Daniel Fox deposition) | $356.25 |
| **Total** | **$2859.90** |

His motion is well-taken and granted.

Next, section 50-6-226(d)(1)(B) states that a court may award attorney's fees and expenses "in addition to attorneys' fees [otherwise] provided for in this section" when an employer "*[u]nreasonably* denies a claim or *unreasonably* fails to timely initiate any of the benefits to which the employee . . . is entitled under this chapter[.]"  (Emphasis added).

The legislature amended this subdivision in 2023, effective April 13, 2023, to substitute "unreasonable" for "wrongful."  The 2023 amendment also deleted the former last sentence, which read: "For purposes of this subdivision (d)(1)(B), 'wrongfully' means erroneous, incorrect, or otherwise inconsistent with the law or facts."

The Appeals Board has not offered guidance on the definition of "unreasonable" in this context since then.  Dictionaries define "unreasonable" as follows: "Not guided by reason; irrational or capricious," *Black's Law Dictionary* 1537 (7th ed. 1999); "Not governed by or acting according to reason; not conformable to reason: absurd; exceeding the bounds of reason or moderation," *Merriam-Webster Dictionary,* https://www.merriam-webster.com/dictionary/unreasonable (last visited June 6, 2025).

Here, Mr. Baxter took over the case from Ms. Johnson-Lockhart on July 13, reviewing the statement she took at the end of June and her claim notes.  He noticed "discrepancies in the reporting of the claim," so he requested records from the hospital, American Family Care, and Dickson Medical Associates.  Specifically, he saw that the screw incident was not reported on June 20 to Ms. Hunter, nor was it mentioned in the records for American Family Care or Dickson Medical Associates.

Mr. Baxter did not follow up with Ms. Johnson-Lockhart to discuss the claim.  Three weeks later, he communicated with Ms. Hunter on August 7 to confirm that she first learned of the puncture wound when Mr. White was in the hospital in late June.

Mr. Baxter spoke with Mr. White on August 7 as well, but he could not recall if he spoke with him any other time.  Mr. Baxter likewise could not recall reading Dr. Noonan's

positive causation opinion but later said that he "may have" read the doctor's notes. These memory lapses give the Court pause.

Ultimately, Mr. Baxter denied the claim based on the "discrepancy" he noticed as soon as he became involved in the claim; the October 7 notice states: "No medical evidence of puncture wound injury to the left foot from initial authorized provider." Mr. Baxter testified that he was "investigating" the claim, and the first denial states that as well. But it seems that, after reviewing the American Family Care and Dickson Medical Associates records in mid-July, Mr. Baxter did little more than simply read the hospital records on receipt and bills as they quickly amassed, amounting to a sum he admitted might be "expensive."

In sum, Mr. Baxter's investigation is troubling, but the rationale for denying the claim is colorable. The Court cannot characterize his decision as "unreasonable," "irrational or capricious," "absurd," or "exceeding the bounds of reason or moderation" at the time he made it. Therefore, the attorney's fees request is denied.

Finally, the Court refers the case to the Compliance Program for consideration of a penalty. Accepting Ms. Hunter's testimony, Mr. White told her about stepping on the screw on June 24, and she completed a second First Report of Injury on June 26. Mr. Baxter fully denied the claim on August 7, but his narrative states that an investigation was ongoing. On October 7, he completed a partial denial.

Tennessee Compilation Rules and Regulations 0800-02-14-.05(6) (2022) states that "decisions on compensability shall be made by the adjusting entity within fifteen (15) calendar days" of notice of the injury. The rule uses mandatory language. Gerber made its compensability decision well past that deadline.

**THEREFORE, IT IS ORDERED:**

1. Gerber shall provide lifetime medical benefits with Dr. Bork for reasonable, necessary, and work-related treatment.

2. Gerber shall immediately pay all reasonable and necessary past medical bills as described in appendix 2 to this order, subject to the fee schedule.

3. Gerber shall pay Mr. White past temporary total disability benefits of $16,030.30.

4. Gerber shall pay Mr. White $95,845.50 as permanent partial disability benefits. Mr. White may file a petition for increased benefits on or after September 21, 2025, if appropriate.

5. Mr. White's attorney is entitled to 20% of the above awards. However, the request

for fees for an unreasonable denial is denied.

6. Discretionary costs totaling $2,859.90 are assessed against Gerber.

7. The $150.00 filing fee is taxed to Gerber, to be paid to the Clerk under Rule 0800-02-21-.06 within five business days, and for which execution might issue if necessary.

8. Gerber shall prepare and submit to the Clerk a Statistical Data Form (SD-2) within ten business days of this order becoming final.

9. Unless appealed, this order becomes final 30 days after issuance.

10. The case is referred to the Compliance Program for consideration of the imposition of a penalty.

**ENTERED June 9, 2025.**

*Kenneth M. Switzer*
_____
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**Appendix 1**

Trial Exhibits:
1. Dr. Shrader's deposition and exhibits
2. Dr. Bork's deposition and exhibits
3. Trial deposition transcript, nurse practitioner Daniel Fox
4. C-23 Denial forms,  and 10/17/23 letter from Mr. Baxter
5. First Reports of Injury
6. Shoe
7. Photos of Mr. White's left-foot injury
8. Photos of Mr. White's left-foot injury
9. Dr. Bork notes, July 31, 2023
10.  Text messages/photos of screw-Mr. White, Ms. Hunter
11. Dickson Medical Associates left foot x-ray, June 20, 2023
12. Photograph of left-foot x-ray, undated, taken by Ms. White
13. Transcript of recorded statement, Marissa Johnson-Lockhart

# Appendix 2 Medical Bills

Exhibit 3, Dr. Shrader's Deposition

Gregory White
Stipulation of Medical Bills

| | |
|---|---|
| 1. Radiology Alliance | $5640.00 |
| 2. Dr. Moshen Hasanin | $1,928.00 |
| 3. Twelve Stone Medical | $35,057.26 |
| 4. US Anesthesia- Anesthesia Medical Group | $10,324.00 |
| 5. Horizon Medical Center | $268,676.95 |
| 6. Dickson Medical Associates | $10,105.00 |
| 7. Imtegumetrix- Wound Care | $815.14 |
| 8. Emergency Medicine Services | $231.00 |
| 9. Hospital Medicine Services | $585.30 |
| 10. American Family Care | $176.00 |
| 11. Dr. Bork- Advanced Foot and Ankle Care Centers | $18,648.00 |
| | |
| Total | $352,186.65 |

The Court additionally reviewed the bills using Excel and reached a different sum.

# Radiology Alliance Bills

| Page # | Description | Charge | Exhibit Total |
|--------|-------------|--------|---------------|
| Page 2-4 | | $ 139.00 | |
| | | $ 630.00 | |
| | | $ 358.00 | |
| | | $ 364.00 | |
| | | $ 364.00 | |
| | | $ 139.00 | |
| | | $ 418.00 | |
| Page 3 | | $ 110.00 | |
| | | $ 839.00 | |
| | | $ 139.00 | |
| | | $ 110.00 | |
| | | $ 364.00 | |
| | | $ 139.00 | |
| Page 4 | | $ 139.00 | |
| | | $ 1,278.00 | |
| | | $ 110.00 | |
| | | $ 5,640.00 | $5,640.00 |

# Dr. Mohsen Hasanin

| Page # | Description | Charge | Exhibit Total |
|--------|-------------|--------|---------------|
| Page 5-9 | | $ 254.00 | |
| | | $ 495.00 | |
| | | $ 135.00 | |
| | | $ 420.00 | |
| | | $ 624.00 | |
| | | $ 1,928.00 | $1,928.00 |

# TwelveStone Medical

| Page # | Description | Charge | Exhibit Total |
|--------|-------------|--------|---------------|
| Page 10-12 | | $ 11,486.40 | |
| | | $ 215.00 | |
| Page 11 | | $ 11,486.40 | |
| | | $ 215.00 | |
| Page 12 | | $ 11,486.40 | |
| | | $ 168.35 | |
| | | $ 35,057.55 | $35,057.26 |

# US Anesthesia--Anesthesia Medical Group/Tristar Horizon Medical Center

| Page # | Description | Charge | Exhibit Total |
|--------|-------------|--------|---------------|
| Page 13-14 | | $ 1,246.00 | |
| | | $ 1,424.00 | |
| | | $ 1,424.00 | |
| | | $ 1,602.00 | |
| Page 14 | | $ 1,246.00 | |
| | | $ 1,068.00 | |
| | | $ 2,314.00 | |
| | | | |
| | | $ 10,324.00 | $10,324.00 |

KEY: HYPERLINKED All Subtotals are hyperlinked to each section of its individual charges for eac
Radiology Alliance Bills

Dr. Mohsen Hasanin

TwelveStone Medical
US Anesthesia
Horizon Medical Center
Dickson Medical Associates
Integumetrix
Emergency Medicine Services
Hospital Medicine Services
American Family Care
Dr. Bork
Total: 375,964.69

# Horizon Medical Center

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit |
|---|---|---|---|
| Page 15 | Room & Care | $22,088.11 | $22,088.11 |
| Page 15-17 | Pharmacy Medications | $4,268.51 | $4,243.79 |
| Page 17 | 258-IV Solutions | $2,077.00 | $2,077.00 |
| Page 18-22 | 259-Drgs/Other | $5,893.41 | $5,893.41 |
| Page 22 | Med-Surg | $12.00 | $12.00 |
| Page 22-23 | Sterile Supplies | $2,741.50 | $2,741.50 |
| Page 23-24 | Chemistry | $9,223.34 | $9,223.34 |
| Page 24 | Lab/Immunology | $1,887.22 | $1,887.22 |
| page 24-25 | Hematology | $4,599.91 | $4,599.91 |
| Page 25-26 | Bact-Micro | $5,703.11 | $5,703.11 |
| Page 26 | Urology | $253.89 | $253.89 |
| Page 26 | X-Ray/Chest | $539.80 | $539.80 |
| Page 26 | Scan/Body | $3,556.86 | $3,556.86 |
| Page 26-27 | Scan/Other | $0.01 | $0.01 |
| Page 27 | OR Services | $30,085.16 | $30,085.16 |
| Page 27 | Anesthesia | $11,208.89 | $11,208.89 |
| Page 27 | Physical Therapy | $1,219.59 | $1,219.59 |
| Page 27 | Phy Therp/Eval | $1,113.46 | $1,113.46 |
| Page 27 | Emerg Room | $4,878.35 | $4,878.35 |
| Page 28-30 | Drugs/Detail Code | $9,002.37 | $9,002.37 |
| Page 30-33 | Drugs/Self Admin | $1,228.29 | $1,228.29 |
| Page 33 | Recovery Room | $5,339.20 | $5,339.20 |
| Page 33 | Gastr-Inst Svs | $7,382.93 | $7,382.93 |
| Page 33 | Vascul Lab | $1,548.08 | $1,548.08 |
| **Total Charges** | | $ 135,850.99 | $135,826.27 |

| Page # | Description | Indiv Charge | Stated Subtotal in Exhibit #3 |
|---|---|---|---|
| Page 15 | Room & Care | $ 2,008.01 | |
| | | $ 2,008.01 | |
| | | $ 2,008.01 | |
| | Room & Care | $ 2,008.01 | |
| | | $ 2,008.01 | |
| | | $ 2,008.01 | |
| | | $ 2,008.01 | |
| | | $ 2,008.01 | |
| | | $ 2,008.01 | |
| | | $ 2,008.01 | |
| | Room & Care | $ 2,008.01 | |
| | | $ 22,088.11 | $22,088.11 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 15-17 | Pharmacy | $ 18.64 | |
| | | $ 143.43 | |
| | | $ 491.08 | |
| | | $ 16.77 | |
| | | $ 39.15 | |
| | | $ 360.50 | |
| | | $ 540.75 | |
| | | $ 18.64 | |
| | | $ 13.09 | |
| | | $ 122.77 | |
| Page 16 | | $ 5.59 | |
| | | $ 13.05 | |
| | | $ 286.86 | |
| | | $ 360.50 | |
| | | $ 76.61 | |
| | | $ 12.36 | |
| | | $ 143.43 | |
| | | $ 13.09 | |
| | | $ 190.58 | |
| | | $ 430.29 | |
| | | $ 143.43 | |
| | | $ 5.59 | |
| | | $ 13.05 | |
| | | $ 286.86 | |
| | | $ 12.36 | Cont. top L Page 3 |
| | | $ 76.61 | |
| | | $ 12.36 | Cont. on Page 3 |
| | | $ 12.36 | |
| | | $ 13.09 | |
| | | $ 190.58 | |
| Page 17 | | $ 11.18 | |
| | | $ 26.10 | |
| | | $ 11.18 | |
| | | $ 26.10 | |
| | | $ 11.18 | Ctont. Page 3 top left |
| | | $ 26.10 | |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit |
|---|---|---|---|
| Page 38 | Med-Surg Supplies | $11.00 | $11.00 |
| Page 38 | Sterile Supplies | $156.00 | $156.00 |
| Page 38 | OR/Minor | $5,654.61 | $5,654.61 |
| Page 38 | Clinic | $724.95 | $724.95 |
| Page 38 | Treatment Room | $1,034.60 | $1,034.60 |
| **Total Charges** | | $ 7,581.16 | $7,581.16 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 38 | Sterile Supplies | $ 20.50 | |
| | | $ 69.00 | |
| | | $ 53.00 | |
| | | $ 13.50 | |
| | | $ 156.00 | $156.00 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 38 | OR/Minor | $ 1,007.52 | |
| | | $ 1,549.03 | |
| | | $ 3,098.06 | |
| | | $ 5,654.61 | $5,654.61 |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit | NOTES |
|---|---|---|---|---|
| Page 42 | 270-Med-Surg | $47.00 | $47.00 | |
| Page 42-43 | 272-Sterile Supplies | $1,001.50 | $1,001.50 | |
| Page 43 | 361-OR/Minor | $5,654.61 | $5,654.61 | |
| Page 43 | 510-Clinic | $685.90 | $685.90 | |
| Page 43 | 761-Treatment | $1,034.60 | $1,034.60 | |
| **Total Charges** | | $ 8,423.61 | $8,423.61 | |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 | NOTES |
|---|---|---|---|---|
| Page 42 | 270-Med-Surg | $ 11.00 | | |
| | | $ 36.00 | | |
| | | $ 47.00 | | |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 | NOTES |
|---|---|---|---|---|
| Page 42 | 272-Sterile Supplies | $ 20.50 | | |
| | | $ 17.00 | | |
| | | $ 53.00 | | |
| | | $ 69.00 | | |
| | | $ 34.00 | | |
| | | $ 52.00 | | |
| | | $ 53.00 | | |
| | | $ 578.00 | | |
| | | $ 53.00 | | |
| | | $ 34.50 | | |
| | | $ 20.50 | | |
| | | $ 17.00 | | |
| Page 43 | | $ 1,001.50 | $1,001.50 | |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 | NOTES |
|---|---|---|---|---|
| Page 43 | 361-OR/Minor | $ 1,007.52 | | |
| | | $ 1,549.03 | | |
| | | $ 3,098.06 | | |
| | | $ (1,007.52) | | |
| | | $ (1,549.03) | | |
| | | $ (3,098.06) | | |
| | | $ 1,007.52 | | |
| | | $ 1,549.03 | | |
| | | $ 3,098.06 | | |
| | | $ 5,654.61 | $5,654.61 | |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 | NOTES |
|---|---|---|---|---|
| Page 43 | 510-Clinic | $ 685.90 | | |
| | | $ (685.90) | | |
| | | $ 685.90 | | |
| | | $ 685.90 | $685.90 | |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 | NOTES |
|---|---|---|---|---|
| Page 43 | 761-Treatment | $ 1,034.60 | | |
| | | $ (1,034.60) | | |
| | | $ 1,034.60 | | |
| | | $ 1,034.60 | $1,034.60 | |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| | | $ 11.18 | |
| | | $ 26.10 | |
| | | $ 11.18 | |
| | | $ 26.10 | |
| | | $ 5.59 | |
| | | $ 13.05 | |
| Page 17 | | $ 4,268.51 | $4,243.79 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 17 | 258-IV Solutions | $ 405.00 | |
| | | $ 81.00 | |
| | | $ 405.00 | |
| | | $ 81.00 | |
| | | $ 648.00 | |
| | | $ 405.00 | |
| | | $ 52.00 | |
| | | $ 2,077.00 | $2,077.00 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 18-22 | 259-Drgs/Other | $ 9.36 | |
| | | $ 94.24 | |
| | | $ 49.08 | |
| | | $ 20.48 | |
| | | $ 33.86 | |
| | | $ 18.72 | |
| | | $ 88.38 | |
| | | $ 47.12 | |
| | | $ 49.08 | |
| | | $ 33.86 | |
| | | $ 9.36 | |
| | | $ 178.78 | |
| | | $ 132.57 | |
| | | $ 24.54 | |
| | | $ 33.86 | |
| | | $ 47.12 | |
| | | $ 178.78 | |
| | | $ 132.57 | |
| | | $ 44.19 | |
| Page 19 | | $ 47.12 | |
| | | $ 24.54 | |
| | | $ 45.17 | |
| | | $ 33.86 | |
| | | $ 178.78 | |
| | | $ 88.38 | |
| | | $ 88.38 | |
| | | $ 47.12 | |
| | | $ 24.54 | |
| | | $ 90.34 | |
| | | $ 33.86 | |
| | | $ 49.08 | |
| | | $ 178.78 | |
| | | $ 132.57 | |
| | | $ 44.19 | |
| | | $ 47.12 | |
| | | $ 24.54 | |
| | | $ 90.34 | |
| | | $ 33.86 | |
| | | $ 73.62 | |
| Page 20 | | $ 178.78 | |
| | | $ 132.57 | |
| | | $ 66.76 | |
| | | $ 44.19 | |
| | | $ 47.12 | |
| | | $ 24.54 | |
| | | $ 90.34 | |
| | | $ 33.86 | |
| | | $ 73.62 | |
| | | $ 178.78 | |
| | | $ 176.76 | |
| | | $ 47.12 | |
| | | $ 24.54 | |
| | | $ 90.34 | |
| | | $ 33.86 | |
| | | $ 73.62 | |
| | | $ 178.78 | |
| | | $ 176.76 | |
| | | $ 8.92 | |
| | | $ 47.12 | Cont. top right ^ |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 21 | | $ 24.54 | |
| | | $ 90.34 | |
| | | $ 33.86 | |
| | | $ 73.62 | |
| | | $ 178.78 | |
| | | $ 176.76 | |
| | | $ 16.69 | |
| | | $ 47.12 | |
| | | $ 24.54 | |
| | | $ 90.34 | |
| | | $ 33.86 | |
| | | $ 73.62 | |
| | | $ 178.78 | |
| | | $ 132.57 | |
| | | $ 8.92 | |
| | | $ 47.12 | |
| | | $ 24.54 | |
| | | $ 45.17 | |
| | | $ 33.86 | |
| | | $ 49.08 | |
| Page 22 | | $ 178.78 | |
| | | $5,893.41 | $5,893.41 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 22-23 | Sterile Supplies | $ 8.00 | |
| | | $ 98.00 | |
| | | $ 245.00 | |
| | | $ 22.00 | |
| | | $ 196.00 | |
| | | $ 23.50 | |
| | | $ 23.50 | |
| | | $ 18.50 | |
| | | $ 150.50 | |
| | | $ 11.00 | |
| | | $ 49.00 | |
| | | $ 47.00 | |
| | | $ 11.00 | |
| | | $ 108.00 | |
| | | $ 18.00 | |
| | | $ 18.00 | |
| Page 23 | | $ 11.00 | |
| | | $ 18.00 | |
| | | $ 18.00 | |
| | | $ 388.00 | |
| | | $ 117.50 | |
| | | $ 94.00 | |
| | | $ 55.50 | |
| | | $ 46.50 | |
| | | $ 270.50 | |
| | | $ 664.50 | |
| | | $ 11.00 | |
| | | $2,741.50 | $2,741.50 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 23-24 | Chemistry | $ 542.28 | |
| | | $ 690.45 | |
| | | $ 334.95 | |
| | | $ 589.79 | |
| | | $ 357.32 | |
| | | $ (382.03) | |
| | | $ 589.79 | |
| | | $ 382.03 | |
| Page 24 | | $ 382.03 | |
| | | $ 589.79 | |
| | | $ 382.03 | |
| | | $ 589.79 | |
| | | $ 589.79 | |
| | | $ 589.79 | |
| | | $ 589.79 | |
| | | $ 254.35 | |
| | | $ 589.79 | |
| | | $ 382.03 | |
| | | $ 589.79 | |
| | | $ 589.79 | |
| | | $9,223.34 | $9,223.34 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| page 24-25 | Hematology | $ 227.33 | |
| Page 25 | | $ 376.42 | |
| | | $ 376.42 | |
| | | $ 376.42 | |
| | | $ 376.42 | |
| | | $ 376.42 | |
| | | $ 304.19 | |
| | | $ 376.42 | |
| | | $ 376.42 | |
| | | $ 376.42 | |
| | | $ 376.42 | |
| | | $ 304.19 | |
| | | $ 376.42 | |
| | | $4,599.91 | $4,599.91 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 24 | Lab/Immunology | $ 175.16 | |
| | | $ 175.16 | |
| | | $ 614.94 | |
| | | $ 746.80 | |
| | | $ 175.16 | |
| | | $1,887.22 | $1,887.22 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 25-26 | Bact-Micro | $ 796.62 | |
| | | $ 209.16 | |
| | | $ 569.30 | |
| | | $ 88.04 | |
| | | $ 321.46 | |
| | | $ 88.04 | |
| | | $ 209.16 | |
| Page 26 | | $ 88.04 | |
| | | $ 398.31 | |
| | | $ 785.47 | |
| | | $ 88.04 | |
| | | $ 321.46 | |
| | | $ 88.04 | |
| | | $ 209.16 | |
| | | $ 569.30 | |
| | | $ 785.47 | |
| | | $ 88.04 | |
| | | $5,703.11 | $5,703.11 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 26 | Urology | $ (253.89) | |
| | | $ 253.89 | |
| | | $ 253.89 | |
| | | $253.89 | $253.89 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 27 | OR Services | $ 6,098.64 | |
| | | $ 7,419.28 | |
| | | $ 9,147.96 | |
| | | $ 7,419.28 | |
| | | $30,085.16 | $30,085.16 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 27 | Anesthesia | $ 2,526.13 | |
| | | $ 2,526.13 | |
| | | $ 1,452.20 | |
| | | $ 2,526.13 | |
| | | $ 2,178.30 | |
| | | $ 11,208.89 | $11,208.89 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 27 | Physical Therapy | $ 406.53 | |
| | | $ 813.06 | |
| | | $ 1,219.59 | $1,219.59 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 27 | Emerg Room | $ 4,029.17 | |
| | | $ 283.06 | |
| | | $ 283.06 | |
| | | $ 283.06 | |
| | | $ 4,878.35 | $4,878.35 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 28-30 | Drugs/Detail Code | $ 150.50 | |
| | | $ 76.79 | |
| | | $ 69.54 | |
| | | $ 207.27 | |
| | | $ 67.07 | |
| | | $ 884.61 | |
| | | $ 237.31 | |
| | | $ 20.65 | |
| | | $ 4.51 | |
| | | $ 132.84 | |
| | | $ 124.00 | |
| | | $ 59.70 | |
| | | $ 249.64 | |
| | | $ 950.34 | |
| | | $ (112.08) | |
| | | $ 112.08 | |
| | | $ 56.04 | |
| | | $ 31.00 | |
| Page 29 | | $ 29.85 | |
| | | $ 62.41 | |
| | | $ 475.17 | |
| | | $ 475.17 | |
| | | $ 20.65 | |
| | | $ 20.65 | |
| | | $ 56.04 | |
| | | $ 67.07 | |
| | | $ 475.17 | |
| | | $ 1,425.51 | |
| | | $ 41.30 | |
| | | $ 41.30 | |
| | | $ 1,425.51 | |
| | | $ 20.65 | |
| | | $ 56.04 | |
| | | $ 20.65 | |
| | | $ 72.44 | |
| | | $ 123.90 | |
| | | $ 123.90 | |
| | | $ 36.76 | |
| Page 30 | | $ 82.60 | |
| | | $ 41.30 | |
| | | $ 123.90 | |
| | | $ 123.90 | |
| | | $ 36.76 | |
| | | $ 123.90 | |
| | | $ 36.76 | |
| | | $ 41.30 | |
| | | $ 9,002.37 | $9,002.37 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 30-33 | Drugs/Self Admin | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 191.95 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 11.79 | |
| Page 31 | | $ 3.94 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 5.50 | |
| | | $ 24.12 | |
| | | $ 11.79 | |
| | | $ 3.94 | |
| | | $ 11.79 | |
| | | $ 3.94 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 11.79 | |
| | | $ 3.94 | |
| | | $ 11.79 | |
| | | $ 3.94 | |
| | | $ 15.73 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 11.79 | |
| | | $ 3.94 | |
| | | $ 19.65 | |
| | | $ 11.81 | |
| Page 32 | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 19.65 | |
| | | $ 11.81 | |
| | | $ 19.65 | |
| | | $ 11.81 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 19.65 | |
| | | $ 11.81 | |
| | | $ 19.65 | |
| | | $ 11.81 | Cont top right |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 19.65 | |
| | | $ 11.81 | |
| | | $ 19.65 | |
| | | $ 11.81 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 3.93 | |
| Page 33 | | $ 11.80 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 19.65 | |
| | | $ 11.81 | |
| | | $ 19.65 | |
| | | $ 11.81 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 19.65 | |
| | | $ 11.81 | |
| | | $ 19.65 | |
| | | $ 11.81 | |
| | | $1,228.29 | $1,228.29 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 33 | Recovery Room | $ 423.07 | |
| | | $ 2,246.53 | |
| | | $ 423.07 | |
| | | $ 2,246.53 | |
| | | $5,339.20 | $5,339.20 |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit | NOTE |
|---|---|---|---|---|
| Page 48 | 510-Clinic | $311.16 | $311.16 | 1c- |
| Page 48 | Peri Vascul Lab | $2,755.40 | $2,755.40 | |
| Total Charges | | $ 3,066.56 | $3,066.56 | |

| Page # | Description | Indiv Charge | Subtotal Stated | NO |
|---|---|---|---|---|
| Page 48 | Peri Vascul Lab | $ 1,207.32 | | |
| | | $ 1,548.08 | | |
| | | $ 2,755.40 | $2,755.40 | |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit | NOTES |
|---|---|---|---|---|
| Page 55 | Sterile Supplies | $43.50 | $43.50 | |
| | | | | Possible Subtractions |
| Page 55 | Treatment Room | $581.22 | $581.22 | 1c-no |
| Total Charges | | $ 624.72 | $624.72 | |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 | NOTES |
|---|---|---|---|---|
| Page 55 | Sterile Supplies | $ (20.50) | | |
| | | $ (212.00) | | |
| | | $ 212.00 | | |
| | | $ 26.50 | | |
| | | $ 17.00 | | |
| | | $ 20.50 | | |
| Total Charges | | $ 43.50 | $43.50 | |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit |
|---|---|---|---|
| Page 51 | Sterile Supplies | $193.50 | $193.50 |
| Page 51 | OR/Minor | $5,654.61 | $5,654.61 |
| Page 51 | Clinic | $ 685.90 | $685.90 |
| Page 51 | Treatment room | $ 1,034.60 | $1,034.60 |
| Total Charges | | $ 7,568.61 | $7,568.61 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 51 | Sterile Supplies | $ 20.50 | |
| | | $ 34.00 | |
| | | $ 17.00 | |
| | | $ 69.00 | |
| | | $ 53.00 | |
| | | $ 193.50 | $193.50 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 51 | OR/Minor | $ 1,007.52 | |
| | | $ 1,549.03 | |
| | | $ 3,098.06 | |
| | | $ 5,654.61 | $5,654.61 |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit | NOTES |
|---|---|---|---|---|
| Page 59 | Room & Care | $22,088.11 | $22,088.11 | |
| Page 59- | Pharmacy | $800.05 | $800.10 | |
| Page 60-63 | Drgs/Other | $ 11,521.32 | $11,521.32 | |
| Page 63 | Med-Surg Supplies | $ 11.00 | $ 11.00 | |
| Page 63-64 | Sterile Supplies | $2,513.00 | $2,513.00 | |
| | Chemistry | $8,484.46 | $8,484.46 | |
| Page 65 | Lab/Immunology | $175.16 | $175.16 | |
| Page 65-66 | Lab/Hematology | 1888.11 | $1,888.11 | |
| Page 66 | Lab/Bact-Micro | $1,980.40 | $1,980.40 | |
| Page 66 | DX Xray | $2,221.46 | $2,221.46 | |
| Page 66 | X-Ray/Chest | $539.80 | $539.80 | |
| Page 66 | OR Services | $28,764.52 | $28,764.52 | |
| Page 66 | OR/Minor | $5,654.61 | $5,654.61 | |
| Page 66 | Anesthesia | $7,608.83 | $7,608.83 | |
| Page 67 | Respiratory SVC | $118.44 | $118.44 | |
| Page 67 | Phys Therp/Eval | $1,113.46 | $1,113.46 | |
| Page 67 | Occupation Ther | $382.82 | $382.82 | |
| Page 67 | Occup Therp/Eval | $1,113.46 | $1,113.46 | |
| Page 67 | Clinic | $724.95 | $724.95 | |
| Page 67 | MRI | $8,372.28 | $8,372.28 | |
| Page 67 | Drugs/Detail Code | $14,372.58 | $14,372.58 | |
| Page 70-72 | Drugs/Self Admin | $361.79 | 361.79 | |
| Page 72 | Recovery Room | $2,669.60 | $2,669.60 | |
| Total Charges | | $ 123,480.21 | $123,480.26 | |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit |
|---|---|---|---|
| Page 76 | Med-Surg Supplies | $11.00 | $11.00 |
| Page 76 | Sterile Supplies | $25.00 | $25.00 |
| Page 76 | OR/Minor | $1,007.52 | $1,007.52 |
| Page 76 | Clinic | $685.90 | $685.90 |
| Total Charges | | $ 1,729.42 | $1,729.42 |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit |
|---|---|---|---|
| Page 80 | Med-Surg Supplies | $11.00 | $11.00 |
| Page 80 | Sterile Supplies | $77.00 | $77.00 |
| Page 80 | Clinic | $311.16 | $311.16 |
| Total Charges | | $ 399.16 | $399.16 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 80 | Sterile Supplies | $ 25.00 | |
| | | $ 22.00 | |
| | | $ 30.00 | |
| | | $ 77.00 | $77.00 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 | NOTES |
|---|---|---|---|---|
| Page 59 | Room & Care | $ 2,008.01 | | |
| | | $ 2,008.01 | | |
| | | $ 2,008.01 | | |
| | Room & Care | $ 2,008.01 | | |
| | | $ 2,008.01 | | |
| | | $ 2,008.01 | | |
| | | $ 2,008.01 | | |
| | | $ 2,008.01 | | |
| | | $ 2,008.01 | | |
| | | $ 2,008.01 | | |
| | Room & Care | $ 2,008.01 | | |
| | | $ 22,088.11 | $22,088.11 | ## |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit |
|---|---|---|---|
| Page 84 | Med-Surg Supplies | $11.00 | $11.00 |
| Page 84 | Sterile Supplies | $36.00 | $36.00 |
| Page 84 | OR/Minor | $1,007.52 | $1,007.52 |
| Total Charges | | $ 1,054.52 | $1,054.52 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 84 | Sterile Supplies | $ 25.00 | |
| | | $ 11.00 | |
| | | $ 36.00 | $36.00 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 | NOTES |
|---|---|---|---|---|
| Page 59 | Pharmacy | $ 11.18 | | |
| | | $ 26.10 | | |
| | | $ 11.18 | | |
| | | $ 26.10 | | |
| | | $ 5.59 | | |
| | | $ 13.05 | | |
| | | $ 16.77 | | |
| | | $ 39.15 | | |
| | | $ 11.18 | | |
| | | $ 26.10 | | |
| Page 60 | | $ 5.59 | | |
| | | $ 13.05 | | |
| | | $ 76.61 | | |
| | | $ 12.36 | | |
| | | $ 13.09 | | |
| | | $ 381.16 | | |
| | | $ 11.18 | | |
| | | $ 26.10 | | |
| | | $ 5.59 | | |
| | | $ 13.05 | | |
| | | $ 11.13 | | |
| | | $ 26.10 | | |
| | | $ 5.59 | | |
| | | $ 13.05 | | |
| | | $ 800.05 | $800.10 | |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit |
|---|---|---|---|
| Page 87 | Sterile Supplies | $26.00 | $26.00 |
| Page 87 | OR/Minor | $1,007.52 | $1,007.52 |
| Total Charges | | $ 1,033.52 | $1,033.52 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 87 | Sterile Supplies | $ 15.00 | |
| | | $ 11.00 | |
| | | $ 26.00 | $26.00 |

| Page # | Description | Re-Calculated | Stated Subtotal |
|---|---|---|---|
| Page 90 | Sterile Supplies | $26.00 | $26.00 |
| Page 90 | OR/Minor | $1,007.52 | $1,007.52 |
| Total Charges | | $ 1,033.52 | $1,033.52 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 90 | Sterile Supplies | $ 15.00 | |
| | | $ 11.00 | |
| | | $ 26.00 | $26.00 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 | NOTES |
|---|---|---|---|---|
| Page 60 | Drgs/Other | $ 16.69 | | |
| | | $ 24.54 | | |
| | | $ 51.08 | | |
| | | $ 16.69 | | |
| | | $ 73.62 | | |
| Page 61 | | $ 25.54 | | |
| | | $ 1,072.68 | | |
| | | $ 20.48 | | |
| | | $ 73.62 | | |
| | | $ 25.54 | | |
| | | $ 1,072.68 | | |
| | | $ 20.48 | | |
| | | $ 73.62 | | |
| | | $ 25.54 | | |
| | | $ 1,072.68 | | |
| | | $ 24.54 | | |
| | | $ 49.08 | | |
| | | $ 25.54 | | |
| | | $ 1,072.68 | | |
| | | $ 20.48 | | |
| | | $ 73.62 | | |
| | | $ 25.54 | | |
| | | $ 1,072.68 | | |
| | | $ 20.48 | | |
| | | $ 41.20 | | |
| Page 62 | | $ 73.62 | | |
| | | $ 25.54 | | |
| | | $ 1,072.68 | | |
| | | $ 24.54 | | |
| | | $ 82.40 | | |
| | | $ 49.08 | | |
| | | $ 25.54 | | |
| | | $ 1,072.68 | | |
| | | $ 8.92 | | |
| | | $ 20.48 | | |
| | | $ 41.20 | | |
| | | $ 49.08 | | |
| | | $ 14.21 | | |
| | | $ 25.54 | | |
| | | $ 1,072.68 | | |
| | | $ 82.40 | | |
| | | $ 73.62 | | |
| | | $ 28.42 | | |
| | | $ 25.54 | | |
| | | $ 1,072.68 | | |
| Page 63 | | $ 82.40 | | |
| | | $ 82.40 | | |
| | | $ 73.62 | | |
| | | $ 28.42 | | |
| | | $ 51.08 | | |
| | | $ 41.20 | | |
| | | $ 41.20 | | |
| | | $ 49.08 | | |
| | | $ 14.21 | | |
| | | $ 25.54 | | |
| | | $ 11,521.32 | $11,521.32 | |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 63 | Sterile Supplies | $ 49.00 | |
| | | $ 18.50 | |
| | | $ 23.50 | |
| | | $ 23.50 | |
| | | $ 98.00 | |
| | | $ 47.00 | |
| | | $ 30.50 | |
| | | $ 891.00 | |
| | | $ 49.00 | |
| | | $ 49.00 | |
| | | $ 11.00 | |
| | | $ 36.00 | |
| | | $ 90.00 | |
| | | $ 930.00 | |
| | | $ 17.00 | |
| | | $ 49.00 | |
| | | $ 49.00 | |
| | | $ 52.00 | |
| | | $2,513.00 | $2,513.00 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 64 | Chemistry | $ 690.45 | |
| | | $ 576.29 | |
| | | $ 254.35 | |
| | | $ 194.27 | |
| | | $ 382.03 | |
| | | $ 423.46 | |
| | | $ 553.48 | |
| | | $ 357.32 | |
| Page 65 | | $ 589.79 | |
| | | $ 382.03 | |
| | | $ 334.95 | |
| | | $ 334.95 | |
| | | $ 589.79 | |
| | | $ 589.79 | |
| | | $ 589.79 | |
| | | $ 382.03 | |
| | | $ 334.95 | |
| | | $ 334.95 | |
| | | $ 589.79 | |
| | | $ 8,484.46 | $8,484.46 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 65 | Lab/Immunology | $ 227.33 | |
| | | $ 227.33 | |
| | | $ 376.42 | |
| | | $ 304.19 | |
| | | $ 376.42 | |
| | | $ 376.42 | |
| Page 66 | | $ 1,888.11 | $1,888.11 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 66 | Lab/Bact-Micro | $ 796.62 | |
| | | $ 398.31 | |
| | | $ 785.47 | |
| | | $ 1,980.40 | $1,980.40 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 66 | DX Xray | $ 1,110.73 | |
| | | $ 1,110.73 | |
| | | $ 2,221.46 | $2,221.46 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 66 | OR Services | $ 21,345.24 | |
| | | $ 7,419.28 | |
| | | $ 28,764.52 | $ 28,764.52 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 66 | OR/Minor | $ 1,007.52 | |
| | | $ 1,549.03 | |
| | | $ 3,098.06 | |
| | | $ 5,654.61 | $5,654.61 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 66 | Anesthesia | $ 2,526.13 | |
| | | $ 5,082.70 | |
| | | $ 7,608.83 | $7,608.83 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 67-70 | Drugs/Detail Code | $ 181.22 | |
| | | $ 76.79 | |
| | | $ 132.84 | |
| | | $ 724.88 | |
| | | $ 230.37 | |
| | | $ 724.88 | |
| | | $ 224.67 | |
| Page 68 | | $ 230.37 | |
| | | $ 724.88 | |
| | | $ 224.67 | |
| | | $ 153.58 | |
| | | $ (181.22) | |
| | | $ 181.22 | |
| | | $ 181.22 | |
| | | $ 149.78 | |
| | | $ 398.52 | |
| | | $ 153.58 | |
| | | $ 76.79 | |
| | | $ 906.10 | |
| | | $ 132.84 | |
| | | $ 153.58 | |
| | | $ 265.68 | |
| | | $ 76.79 | |
| | | $ 724.88 | |
| | | $ 132.84 | |
| | | $ 398.52 | |
| | | $ 230.37 | |
| Page 69 | | $ 724.88 | |
| | | $ 181.21 | |
| | | $ 398.52 | |
| | | $ 230.37 | |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| | | $ 41.30 | |
| | | $ 20.65 | |
| | | $ 20.65 | |
| | | $ 20.65 | |
| | | $ 56.04 | |
| | | $ 72.44 | |
| | | $ 543.66 | |
| | | $ 181.21 | |
| | | $ 230.37 | |
| | | $ 398.52 | |
| | | $ 20.66 | |
| | | $ 20.64 | |
| | | $ 724.88 | |
| | | $ 181.21 | |
| | | $ 110.28 | |
| | | $ 265.68 | |
| Page 70 | | $ 153.58 | |
| | | $ 30.99 | |
| | | $ 30.96 | |
| | | $ 16.19 | |
| | | $ 70.27 | |
| | | $ 724.88 | |
| | | $ 181.21 | |
| | | $ 73.52 | |
| | | $ 16.19 | |
| | | $ 265.68 | |
| | | $ 153.58 | |
| | | $ 10.33 | |
| | | $ 10.32 | |
| | | $ 543.66 | |
| | | $ 36.76 | |
| | | $ 14,372.58 | $14,372.58 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 70-72 | Drugs/Self Admin | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| Page 71 | | $ 11.80 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 15.73 | |
| | | $ 11.79 | |
| | | $ 3.94 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 7.86 | |
| | | $ 7.87 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 3.93 | |
| | | $ 11.80 | |
| | | $ 361.79 | $361.79 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 72 | Recovery Room | $ 423.07 | |
| | | $ 2,246.53 | |
| | | $ 2,669.60 | $2,669.60 |

| Page # | Description | Stated Subtotal | NOTES |
|---|---|---|---|
| Page 87 | Sterile Supplies | $26.00 | |
| Page 87 | OR/Minor | $1,007.52 | No subcharge/individual charges |
| | | | |
| **Total Charges** | | $1,033.52 | |

| Page # | Description | Re-Calculated Subtotal | Stated Subtotal in Exhibit | NOTES |
|---|---|---|---|---|
| Page 90 | Sterile Supplies | $26.00 | $26.00 | |
| Page 90 | OR/Minor | $1,007.52 | $1,007.52 | No subcharge/individual charges |
| | | | | |
| **Total Charges** | | $ 1,033.52 | $1,033.52 | |

| Page # | Description | Subtotal Stated in | NOTES |
|---|---|---|---|
| Page 87 | Sterile Supplies | | |
| | | | |
| | | $26.00 | |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 | NOTES |
|---|---|---|---|---|
| Page 90 | Sterile Supplies | $ 15.00 | | |
| | | $ 11.00 | | |
| | | $ 26.00 | $26.00 | |

# Dickson Medical Associates PC

| Page # | Description | Re-Calculated Encounter Total | Stated Encounter Total on Page 1 of Exhibit #3 |
|---|---|---|---|
| Page 99 | | $291.00 | $291.00 |
| Page 99 | | $291.00 | $291.00 |
| Page 99 | | $2,905.00 | $2,905.00 |
| Page 99 | | $94.00 | $94.00 |
| Page 100 | | $291.00 | $291.00 |
| Page 100 | | $370.00 | $370.00 |
| Page 100 | | $94.00 | $94.00 |
| Page 100-101 | | $2,966.00 | $2,966.00 |
| Page 101 | | $614.00 | $614.00 |
| Page 101-102 | | $291.00 | $291.00 |
| Page 102 | | $71.00 | $71.00 |
| Page 102 | | $291.00 | $291.00 |
| Page 102-103 | | $231.00 | $231.00 |
| Page 103 | | $144.00 | $144.00 |
| Page 103 | | $444.00 | $444.00 |
| Page 103 | | $144.00 | $144.00 |
| Page 103-104 | | $573.00 | $573.00 |
| | | | |
| Total Charges | | $ 10,105.00 | $10,105.00 |

| Page # | Description | Indiv Charge | Encounter Total |
|---|---|---|---|
| Page 99 | | $ 43.00 | |
| | | $ 26.00 | |
| | | $ 16.00 | |
| | | $ 9.00 | |
| Page 100 | | $ 94.00 | $94.00 |

| Page # | Description | Indiv Charge | Subtotal Stated in Exhibit #3 |
|---|---|---|---|
| Page 100 | | $ 43.00 | |
| | | $ 26.00 | |
| | | $ 16.00 | |
| | | $ 9.00 | |
| | | $ 94.00 | $94.00 |

| Page # | Description | Indiv Charge | Encounter Total |
|---|---|---|---|
| Page 101 | | $ 1,322.00 | |
| | | $ 498.00 | |
| | | $ 640.00 | |
| | | $ 291.00 | |
| | | $ 215.00 | |
| | | $ 498.00 | |
| | | $ (498.00) | |
| | | $ 2,966.00 | $2,966.00 |

| Page # | Description | Indiv Charge | Encounter Total |
|---|---|---|---|
| Page 101 | | $ 506.00 | |
| | | $ 108.00 | |
| | | $ 614.00 | $614.00 |

| Page # | Description | Indiv Charge | Encounter Total |
|---|---|---|---|
| Page 102-103 | | $ 54.00 | |
| | | $ 43.00 | |
| | | $ 39.00 | |
| | | $ 32.00 | |
| | | $ 33.00 | |
| | | $ 21.00 | |
| Page 103 | | $ 9.00 | |
| | | $ 231.00 | $231.00 |

| Page # | Description | Indiv Charge | Encounter Total |
|---|---|---|---|
| Page 103-104 | | $ 197.00 | |
| Page 104 | | $ 290.00 | |
| | | $ 86.00 | |
| | | $ 573.00 | $573.00 |

# Integumetrix

| Page # | Description | Indiv Charge | Total Cost Represented on Page 1 of Exhibit |
|---|---|---|---|
| Page 105 | | $ 559.89 | |
| | | $ 255.25 | |
| | | $ 815.14 | $815.14 |

# Emergency Medicine Services

| Page # | Description | Indiv Charge | Total Cost Represented on Page 1 of Exhibit #3 |
|---|---|---|---|
| Page 108-109 | | $ 770.00 | |
| | | $ (539.00) | Adjustment |
| | | #REF! | $231.00 |

# Bork-Adv Foot and Ankle Care Centers

| Page # | Description | Indiv Charge | Total Cost Represented on Page 1 of Exhibit #3 |
|---|---|---|---|
| Page 110 | | $ 260.00 | |
| | | $ 1,660.00 | |
| | | $ 1,660.00 | |
| | | $ 260.00 | |
| | | $ 260.00 | |
| Page 111 | | $ 306.00 | |
| | | $ 658.00 | |
| | | $ 380.00 | |
| | | $ 306.00 | |
| | | $ 658.00 | |
| | | $ 380.00 | |
| Page 112 | | $ 306.00 | |
| | | $ 658.00 | |
| | | $ 380.00 | |
| | | $ 260.00 | |
| | | $ 306.00 | |
| | | $ 260.00 | |
| Page 113 | | $ 790.00 | |
| | | $ 1,940.00 | |
| | | $ 306.00 | |
| | | $ 306.00 | |
| | | $ 306.00 | |
| Page 114 | | $ 306.00 | |
| | | $ 306.00 | |
| | | $ 306.00 | |
| | | $ 306.00 | |
| | | $ 306.00 | |
| Page 115 | | $ 306.00 | |
| | | $ 306.00 | |
| | | $ 306.00 | |
| | | $ 306.00 | |
| Page 116 | | $ 306.00 | |
| | | $ 306.00 | |
| | | $ 79.00 | |
| | | $ 185.00 | |
| Page 117 | | $ 306.00 | |
| | | $ 306.00 | |
| | | $ 185.00 | |
| Page 118 | | $ 34.00 | |
| | | $ 27.00 | |
| | | $ 185.00 | |
| | | $ 180.00 | |
| | | $ 81.00 | |
| | | $ 185.00 | |
| Page 119 | | $ 180.00 | |
| | | $ 112.00 | |
| | | $ 185.00 | |
| | | $ 180.00 | |
| | | $ 81.00 | |
| | | $ 185.00 | |
| | | #REF! | $18,648.00 |

# Hospital Medicine Services of TN

| Page # | Description | Indiv Charge | Total Cost Represented on Page 1 of Exhibit #3 |
|---|---|---|---|
| Page 121-122 | BEFORE ANY ADJUSTMENTS | $ 796.00 | |
| | | $ 398.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | $ 1,194.00 | $585.30 |

# American Family Care

| Page # | Description | Indiv Charge | Total Cost Represented on Page 1 of Exhibit #3 |
|---|---|---|---|
| Page 123 | | $ 176.00 | |
| | | $176.00 | $176.00 |

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on June 9, 2025.

| Name | Certified Mail | Regular mail | Email | Sent to |
|---|---|---|---|---|
| Larry Hicks, employee's attorney | | | X | office@hickslawfirm.net<br>larry@hickslawfirm.net |
| Fred Hodge, Neil McIntire, employer's attorneys | | | X | Fhodge@howell-fisher.com<br>Nmcintire@howell-fisher.com<br>Kfair@howell-fisher.com |
| Patrick Ruth, SIF attorney | | | X | Patrick.Ruth@tn.gov |
| Compliance | | | X | WCCompliance.Program@tn.gov |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

15



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*